## DAUGHERTY v STATE

Ohio Appeals, 2nd Dist, Fayette Co
No. 199. Decided Oct 8, 1931

N. P. Clyburn, Maddox & Maddox, Washington C. H.; Paul Howland and Sherman Deaton, Urbana, for Daugherty.

Norman L. McLean, Prosecuting Atty., and Louis J. Schneider, Special Asst., for State.

PER CURIAM

If said transaction was bona fide and as shown by the records of the bank, the de-, fendant was not guilty of any of the offenses charged in connection with said transaction.

But if the transaction was not a bona fide loan to Perrill, but was fictitious throughout, being arranged and manipulated by the defendant so as to apparently represent a genuine transaction, when neither the defendant nor Perrill intended it to be such, then the jury would be justified in finding the defendant guilty of the abstraction and misapplication of the funds of the bank so converted to his use.

The controlling issue was plain and simple, and the defendant had the right to have that issue presented to the jury in such a manner as to make sure that the guilt or innocence of the defendant was determined by the jury in accordance with its finding in reference solely to said transaction.

The trial judge, early in the charge, after reading the statute, stated the issue to the jury in the following language:

"The state claims that in 1927 the defendant was president of two banks in this county, one the Commercial Bank of Morris-Sharp and Company, the other the Midland National Bank; in that year it is claimed the Commercial Bank of Morris-Sharp and Company purchased the Midland National Bank and the Fayette County Bank; that the capital stock of the Commercial Bank of Morris-Sharp and Company was increased from 50,000 to 200,000 dollars; the name changed to the Ohio State Bank and the defendant continued as president of the last mentioned bank until it was closed on May 12, 1930.

"The state claims that the bank at the time it closed had about four thousand depositors with deposits aggregating about two million dollars; that the defendant, as president, practically from its inception was using the bank, its funds, credit and money for his own purposes and for his own gain and profit and contrary to law.

"It is claimed that the defendant borrowed from the bank in his own name as much or more money than allowed by law; that he loaned certain other persons more money than allowed by law, it being claimed that about $42,000 was the largest amount any one person could borrow.

"The state further claims, that after bor-

rowing as much or more money than allowed by law, as part of his plan or scheme to use this bank for his own purposes and for his own gain and profit by a series of manipulations, he secured approximately $30,000 of the money of the bank including the $5,350 the subject of the indictment in this case.

"The state claims that on the 30th day of January, 1930, John Perrill was one of the customers of the bank and also a friend of the defendant; on that date John Perrill's bank account was overdrawn and he was also indebted to the bank in the sum of $7,000, on a direct loan.

"It is claimed on or about that date, John Perrill went to the bank at the request of the defendant and that during a conversation between them, the defendant asked Perrill to help him out; that as a result of their conversation, Perrill signed two checks in blank; at that time Perrill told the defendant he had no money in the bank and the defendant said that would be all right, he would take care of it and for Perrill not to worry about it; that a note for $5,350 apparently bearing the signature of Perrill and dated the same date as the checks, was found in the bank and that Perrill has no recollection of having signed this note.

"It is further claimed that during the conversation between Perrill and the defendant a Coffman Manufacturing Company note was mentioned and the defendant told Perrill if anyone asks you about this, you just tell them you bought a Coffman Manufacturing Company note; that on that same day a safety deposit box was assigned to Perrill without charge and that after the close of the bank, a $10,000 note of the Coffman Manufacturing Company was found in the box; that Perrill knows nothing about said note.

"The state further claims that the two checks signed by Perrill were later filled in by the defendant, one for $3,000 and one for $2,350, and by means of these checks and certain deposit slips made by the defendant for $5,350, the funds of the bank went into the account of the defendant and were used by him for his own use and benefit; that this was one of a series of transactions, and a part of the plan or scheme of the defendant to use this bank for his own purposes and his own gain and profit, and contrary to law."

And the claim of the defense was simply stated to be:

"* * * that the defendant was a banker and business man of this community of considerable means; that as president of the bank, he was faithful to his duties; that there is no taint of criminality in the transaction alleged in the indictment.

"The defense claims there was no scheme or plan to use the bank or its funds, credit or money by the defendant for his own purposes or for his own gain and profit.

"The defendant denies that he is guilty of any or all of the offenses charged against him."

The prominent issue thus presented to the jury was as to whether the defendant, by a series of manipulations over a number of years, pursued a plan or scheme to use the bank for his own purposes and for his own gain and profit. The jury was told that that was the claim of the state and that claim was denied by the defendant; but nowhere in the charge was the jury told in detail the claim of the defendant as to the Perrill transaction, as to which alone he was on trial. This broad claim of the state, that the defendant manipulated the affairs of the bank for his own benefit and profit, was referred to many times during the reception of evidence and in the charge of the court. the court specifically charging that evidence of transactions other than the Perrill transaction should be considered by the jury "for the purpose of determining whether or not the defendant was engaged in a scheme or plan to use this bank for his own purposes and for his own gain and profit," and the major portion of the evidence introduced related to matters in support of that claim and had no connection whatever with the specific charges upon which the defendant was being tried.

Notwithstanding the objection of the defendant, the state was permitted to introduce a mass of records and oral evidence relating to the merger of certain banks two years before the Perrill transaction. The state was also permitted to introduce evidence in reference to many transactions of the defendant over a period of years, and many of said transactions were not similar to the Perrill transaction.

As has been said, the defendant was upon trial upon one indictment containing five counts, each and every one of which related to the Perrill transaction. Notwithstanding this situation, by the claim of the state and the evidence introduced and the manner in which the trial was conducted, there was added to these counts, an additional charge —to-wit, that the defendant was guilty of mismanagement of the bank for his own profit and gain, which resulted in its failure, thereby affecting its 4000 depositors.

Apparently to prove this charge, the state offered evidence about the condition of the

banks which went into the merger; the amounts of the loans which the directors had borrowed from the bank, most of which had been borrowed from the banks before the merger and which were carried in the new bank after the merger with the knowledge and consent of the superintendent of banks; evidence was offered impeaching the integrity and good faith of those who promoted the merger and the amount of the surplus of the new bank; an attack was made upon the solvency of the bank at the time of the merger and subsequent thereto; and many other attacks were made upon the institution under the guise of showing the guilty knowledge of the defendant and his misconduct in the management of said bank.

Questions were raised as to the reserve of the bank at the time certain loans were made and at the time a dividend was declared. Evidence was offered showing the salary of the defendant as an officer of the bank and his connection with many transactions of the bank, which had no relation whatever to the charges contained in the indictment.

Most of this evidence in regard to these matters was admitted by the trial court over the objection and exception of the defendant. These matters were irrelevant and incompetent and did not throw any light upon the charges contained in the indictment. So far as the charges made in the indictment were concerned, it did not make any difference whether the reserve was low or not, or whether a dividend had been paid by the directors which ought not to have been paid, or whether the bank was solvent at the time of the merger or at any other time. The only evidence which ought to have been submitted to the jury was that which had some relation to the John Perrill transaction, including proper and permissible evidence bearing upon the defendant's intention. It was not the province of the court and jury to pass upon the question whether the banks should have been merged two years before, or whether the requirements of the banking department of the state in reference to such merger were complied with, as these matters had been placed in the control of the superintendent of banks by the general assembly, and the defendant was not on trial for any act of his in reference thereto.

From a reading of all that transpired at the trial, as disclosed by the record in this case, we cannot escape the conclusion that the verdict of the jury was based upon a finding that the defendant, over a period of years, manipulated the affairs of the bank for his own use and profit, which caused the failure of the bank, and that that was what he was found guilty of, rather than upon the specific charges upon which he was being tried.

The jury found the defendant guilty of every charge contained in the indictment, although there was no evidence whatever in support of the charge made in the second count, as to the misapplication of the credit of the bank.

The record is entirely too voluminous to be discussed in any detail in an opinion, but we have carefully read every word of it and considered the same and all of the exhibits in the case, and we state our conclusions to be:

First, we hold that all of the evidence relative to the merger of the banks two years before the transaction in question was incompetent, and that all the evidence as to other claimed similar transactions, except that of the C. L. Daugherty transaction and possibly the L. H. Daugherty transactions, should have been excluded from the consideration of the jury—either because they did not constitute transactions similar to the one the defendant was being tried upon, or because they were transactions which, according to the uncontradicted evidence in the record, were in no wise criminal; the evidence included within the two specifications just mentioned constituted the greater part of the evidence in the case, and the permitting of the jury to consider such evidence clearly deprived the defendant of a fair trial such as he was entitled to under the constitution and laws of the state.

Second, we hold that it was error for the court to state the claims of the state in the manner hereinbefore referred to and to fail to fully set forth the claim of the defendant, and that it was error for the court to charge upon said claimed similar transactions which should have been eliminated from the case and to charge that the jury should consider evidence as to such transactions in determining whether or not the defendant was engaged in a scheme or plan to use the bank for his own purposes and for his own gain and profit, and that the charge as a whole, when applied to the competent evidence in the case, was misleading and erroneous.

Third, we hold that it was error for the court to charge the jury that the jury would be warranted in finding that the defendant was guilty of a similar offense if, when the loans to his wife, L. H. Daugherty, were made by him, the reserve of the bank was below the amount required by law.

Fourth, we hold that the finding of the jury, if such a finding was really made, that the evidence in reference to the Perrill

transaction established the guilt of the defendant beyond a reasonable doubt, is manifestly against the weight of the evidence.

We are not called upon in this case to consider or pass upon the manner in which the defendant conducted the affairs of the bank other than in the Perrill transaction and such other transactions as have legitimate bearing upon his intention in the Perrill transaction, and we express neither approval nor disapproval of matters not before us for consideration.

Without impugning the motives of anyone, we find that the defendant did not have the question of his guilt or innocence of the specific charge made against him submitted to a jury in such a way as to secure to him the fair trial he is entitled to under the laws of this state.

Judgment reversed and cause remanded.

PARDEE, PJ, WASHBURN and FUNK, JJ, concur.